## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UBERETHER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-88-RGA |
| | ) | |
| ANITIAN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Presently before the court in this breach of contract action is Anitian, Inc.'s

("Defendant") Partial Motion to Dismiss ("Motion") UberEther, Inc.'s ("Plaintiff") fraud in the

inducement claim (Count II) asserted in the First Amended Complaint ("FAC").[1]  (D.I. 13)  For

the following reasons, is it recommended that the court DENY Defendant's Motion.

## II.    BACKGROUND

Plaintiff is an information technology company which provides and sells cloud services

to improve information security and management.  (D.I. 12 at ¶ 2)  Plaintiff developed the cloud

service offering "IAM Advantage" with the intention of selling it to the Department of Defense

("DOD") and other governmental agencies to address their user identity and access management

concerns.  (*Id.* at ¶¶ 7–9)

Before the technology could be purchased by the government, Plaintiff needed to

complete and pass an assessment performed by a third-party assessment organization ("3PAO")

to obtain an authorization to operate pursuant to the Federal Risk and Authorization Management

---

[1] The briefing for the Motion is as follows: Defendant's opening brief (D.I. 14), Plaintiff's
answering brief (D.I. 17), and Defendant's reply brief (D.I. 19).

Program ("FedRAMP"). (*Id.* at ¶¶ 10, 13) FedRAMP is a government-wide program that establishes the mandatory levels of security requirements for cloud services, classifying them at Low, Moderate, and High risk impact levels or "baselines." (*Id.* at ¶¶ 11–12)

In addition to FedRAMP, the Plaintiff had to satisfy the more stringent security requirements of the DOD's Cloud Computing Security Requirements Guide ("DOD SRG") to obtain an authorization necessary for providing services to DOD customers. (*Id.* at ¶¶ 16–20) For example, to obtain an authorization to operate in the DOD SRG Impact Level 5 ("IL5") environment, the provider's proposed cloud service must be assessed by an approved 3PAO and the Defense Information Systems Agency ("DISA") Cloud Security Control Assessor ("SCA"). (*Id.* at ¶ 21) The cloud services offering must satisfy both the FedRAMP High baseline and the additional DOD SRG IL5 requirements. (*Id.*)

The security audit by the 3PAO results in completion of a Readiness Assessment Report ("RAR"). (*Id.* at ¶¶ 14–15) The RAR contains a summary of the cloud service provider's ability to satisfy the security requirements. (*Id.* at ¶ 15) The 3PAO submits the RAR to the DISA SCA who reviews it for compliance before a cloud service provider obtains an authorization to operate its program. (*Id.* at ¶ 23) A cloud service provider cannot offer its program for a DOD customer if it fails the RAR. (*Id.* at ¶ 24)

When the DOD expressed interest in IAM Advantage, the Plaintiff met with the Defendant for an initial presentation in November of 2019. (*Id.* at ¶¶ 9, 37) Defendant provides a Compliance Automation Platform for FedRAMP. (*Id.* at ¶ 27) Defendant claims its platform is "designed to dramatically accelerate [the] FedRAMP Authorization process." (*Id.*)

Following a series of meetings and communications with the Defendant in 2020 and 2021, the Plaintiff contracted with the Defendant for services that would prepare the Plaintiff to

2

become "audit ready" under the FedRAMP Moderate baseline. (*Id.* at ¶¶ 38–50) The parties signed a Master Services Agreement ("MSA") accompanied by a "Moderate Proposal" on March 31, 2021. (*Id.* at ¶¶ 6, 51) Despite its awareness that Defendant's performance under the Moderate Proposal was inconsistent with Defendant's prior promises and assurances about its capabilities, Plaintiff entered into an addendum to the MSA with the Defendant known as the "High Proposal" on May 31, 2021, to become audit-ready for the FedRAMP High baseline and DOD SRG IL5 environment. (*Id.* at ¶¶ 72, 75, 94)

Plaintiff alleges that it was induced to enter into the initial agreements because of the Defendant's numerous pre-contractual assurances that it possessed the resources, tools, experience, and technical expertise to enable Plaintiff to become audit-ready for the security assessment. (*Id.* at ¶¶ 1, 37–50) Plaintiff contends that Defendant represented that it had multiple customers audit-ready for FedRAMP Moderate and "customers who jump right to [DOD SRG] IL5 out of the box." (*Id.* at ¶¶ 32–33, 40–41, 64)

Plaintiff claims soon after the execution of the MSA, it became aware of inconsistencies between Defendant's assurances and its performance and pointed them out to the Defendant. (*Id.* at ¶¶ 89–91) Defendant's Founder and Chief Technical Officer, Andrew Plato, admitted Defendant's prior representations were false and exaggerated but gave new assurances that the problems would be corrected. (*Id.* at ¶¶ 64–66, 94) Thus, the Plaintiff alleges it was further induced to maintain and expand the scope of services under the contract in reliance upon Defendant's alleged new false representations that it could successfully provide the services promised. (*Id.* at ¶¶ 70, 72) Plaintiff further alleges the Defendant's inadequacy, inexperience, lack of resources and numerous delays throughout the process caused Plaintiff to fail the required

assessments, re-submit for new assessments, and incur significant financial costs. (*See e.g.*, *id.* at ¶¶ 1, 127, 161–62, 184, 186)

On January 21, 2022, Plaintiff filed suit against Defendant alleging breach of contract (Count I) and fraud in the inducement (Count II). (D.I. 1)  The court has subject matter jurisdiction based on diversity pursuant to 28 U.S.C. § 1332(a), as the Plaintiff is a Virginia corporation and the Defendant is a Delaware corporation. (D.I. 12 at ¶ 4)

On February 14, 2022, Defendant moved to dismiss the original Complaint. (D.I. 8) Plaintiff responded by filing the FAC on March 23, 2022. (D.I. 12)  On April 1, 2022, Defendant filed the present Motion. (D.I. 13)

## III.   LEGAL STANDARD

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

For fraud claims there is a heightened pleading requirement. "[A] party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

## IV. DISCUSSION

### A. The MSA[2] Does Not Contain a Clear and Unambiguous Anti-Reliance Provision

The court considers the language of the MSA integral to the pleadings and interprets it in accordance with Delaware law.[3]

---

[2] On a motion to dismiss pursuant to Rule 12(b)(6), the court may consider "document[s] integral to or explicitly relied upon in the complaint" without converting the motion into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. The MSA, Moderate and High Proposals were attached to the Defendant's opening brief and their provisions are cited in the FAC. (D.I. 14, Ex. 1; *see e.g.*, D.I. 12 at ¶¶ 51, 58–61, 73)

[3] The MSA contains a Delaware forum selection clause and provides that the contract "shall be governed by and interpreted in accordance with the laws of the State of Delaware." (D.I. 14, Ex. 1 at § 2.19)

Defendant argues that anti-reliance language in the MSA precludes Plaintiff from basing a fraud in the inducement claim on extra-contractual representations.  (D.I. 14 at 11–12)  Defendant contends section 2.21 (the "integration clause") and section 2.5 (the "warranty clause") of the MSA together preclude Plaintiff's reliance on representations outside of the contract.  (*Id.* at 13–14)  The integration clause states:

> This Agreement constitutes the entire agreement and understanding of the parties as to the subject matter hereof and merges and supersedes all prior representations, proposals, discussions, and communications whether oral or in writing.

(D.I. 14, Ex. 1 at § 2.21)

The relevant portions of the warranty clause provide as follows:

> [Defendant] represents that: (a) it and each of its employees, consultants and subcontractors performing Services possesses the required skills to provide and perform the Services in accordance with this Agreement and the Proposal; and (b) the Services will be performed for and delivered to [Plaintiff] in strict conformance with the Proposal, in a diligent, workmanlike manner and in accordance with industry standards, laws and governmental regulations expressly applicable to the performance of such Services.
>
> […]
>
> Notwithstanding the foregoing, [Plaintiff] understands and acknowledges that it is not always feasible for [Defendant] and each of its employees, consultants, and subcontractors to possess complete knowledge of all possible implementations of a particular third-party application(s) and that of the [Plaintiff's] application(s).  [Plaintiff] agrees to reasonably explain the unique designs, usage, and configurations of any relevant technology or methodology used in [Plaintiff's] business if and as requested by [Defendant] in writing to ensure that [Defendant] and its agents are able to properly fulfill the terms outlined in a Proposal.
>
> […]
>
> THE FOREGOING PROVISIONS ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER WARRANTIES, WRITTEN OR ORAL, STATUTORY, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MECHANTABILITY [sic] OR FITNESS FOR A PARTICULAR PURPOSE AND ANY WARRANTY OF NON-INFRINGEMENT.
>
> [Defendant] provides no other warranties with respect to the Services and Deliverables than those expressly set forth in this Section[.]

6

(*Id.* at § 2.5) (emphasis in original)

Plaintiff argues that the integration and warranty clauses in the MSA do not clearly and unambiguously preclude Plaintiff's reliance on Defendant's extra-contractual statements that induced it to enter the contract. (D.I. 17 at 10–12)

To preclude a fraud in the inducement claim, "the contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners." *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004). While "Delaware law does not require magic words," the intent to disclaim reliance on representations outside of the contract needs to be clear and unambiguous. *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 51 (Del. Ch. 2015); *see also MidCap Funding X Trust v. Graebel Companies, Inc.*, No. 2018-0312-MTZ, 2020 WL 2095899, at *19 (Del. Ch. Apr. 30, 2020) (stating the contract must "identify the specific information on which a party has relied and which foreclose reliance on other information").

Defendant argues the MSA contains anti-reliance language similar to the anti-reliance provisions enforced by the court in *Prairie Capital III, L.P.* and *MidCap Funding X Trust*, thus, barring Plaintiff's fraud in the inducement claim. (D.I. 14 at 12–15)

In *Prairie Capital III, L.P.*, the court found the contract precluded plaintiff's extra-contractual fraud claim because the contract contained clear anti-reliance language. 132 A.3d at 50. In addition to the integration clause, the contract contained an exclusive representations clause, which stated:

> The [plaintiff] has relied on (a) the results of its own independent investigation and (b) the representations and warranties of the [defendant] expressly and specifically set forth in this Agreement, including the Schedules. SUCH REPRESENTATIONS AND

7

WARRANTIES BY THE [DEFENDANT] CONSTITUTE THE SOLE AND
EXCLUSIVE REPRESENTATIONS AND WARRANTIES OF THE [DEFENDANT]
TO THE [PLAINTIFF] IN CONNECTION WITH THE TRANSACTION, AND THE
[PLAINTIFF] UNDERSTANDS, ACKNOWLEDGES, AND AGREES THAT ALL
OTHER REPRESENTATIONS AND WARRANTIES . . . ARE SPECIFICALLY
DISCLAIMED BY THE [DEFENDANT].

*Id.* (emphasis in original).

Similarly, in *MidCap Funding X Trust*, the court found anti-reliance language because the

relevant provision stated: "Each and every one of the parties hereto further expressly agrees and

acknowledges that it is not entering into this Agreement in reliance upon any representations,

promises or assurance other than those expressly set forth in this Agreement."  2020 WL

2095899, at *7.

Unlike *Prairie Capital III, L.P.* and *MidCap Funding X Trust*, the integration and

warranty clauses of the MSA fail to explicitly address reliance on representations.  Defendant

admits that the standard integration clause of section 2.21 is not sufficient on its own to preclude

reliance.  (D.I. 19 at 3–4; *see* D.I. 14, Ex. 1 at § 2.21)  *See Kronenberg*, 872 A.2d at 593 ("The

presence of a standard integration clause alone . . . will not suffice to bar fraud claims.").

In furtherance of its anti-reliance argument, Defendant relies on the warranty provisions

in section 2.5.  (D.I. 14 at 13–14)  This provision purports to disclaim all other warranties outside

of those expressed in section 2.5 and provides the sole and exclusive remedy for breach of the

limited warranty.[4]  (D.I. 14, Ex. 1 at § 2.5)  Defendant argues this limited warranty provision in

---

[4] The relevant part of the warranty clause states: "If the Deliverables do not meet the
specifications or requirements expressly described in the Proposal, the [Plaintiff] will notify
[Defendant] in writing within thirty (30) business days[.] . . . [Defendant] will immediately re-
perform all non-conforming Services and/or replace, repair, or return all non-conforming
Deliverables. *[Plaintiff] agrees that the foregoing represents [Plaintiff's] sole and exclusive
remedy* for any failure of the Services and/or Deliverables to meet the limited warranty provided
in this Section[.] . . . *[Defendant] provides no other warranties* with respect to the Services and

conjunction with the integration clause, amounts to a clear and unambiguous anti-reliance provision. (D.I. 14 at 13–14)

Defendant's argument fails because it provides no authority for finding the warranty disclaimer is the equivalent of an anti-reliance provision precluding a fraud claim. The provision arguably disclaims other warranties but fails to clearly and unambiguously express that the Plaintiff disclaims reliance on prior representations, nor does it set forth what, if anything, the parties relied upon in executing the MSA.

Plaintiff further argues that section 2.12 explicitly accounts for the viability of fraud claims. (D.I. 17 at 12–13) Section 2.12 states in relevant part:

> NOTHING IN THIS AGREEMENT SHALL LIMIT OR EXCLUDE A PARTY'S LIABILITY FOR GROSS NEGLIGENCE, FRAUD OR INTENTIONAL MISCONDUCT OF SUCH PARTY OR ITS EMPLOYEES[.]

(D.I. 14, Ex. 1 at § 2.12) (emphasis in original) The Defendant has failed to address this argument in its reply brief. (*See* D.I. 19) It has not explained how the court could find clear and unambiguous anti-reliance language when the MSA expressly preserves liability for fraud.

Based upon the foregoing, it is recommended that the court find the integration and warranty clauses do not amount to a clear and unambiguous anti-reliance provision precluding Plaintiff's claim for fraud in the inducement. *See Lieberman v. BeyondTrust Corp.*, No. 19-1730-RGA, 2020 WL 1815547, at *2 (D. Del. Apr. 9, 2020) (finding no anti-reliance provision because the party "did not affirmatively promise not to rely on such representations").

Moreover, the Plaintiff claims that even if there were anti-reliance language in the MSA, the presence of a contractual fraud claim precludes dismissal of Count II. (D.I. 17 at 15–16)

---

Deliverables than those expressly set forth in this Section[.]" (D.I. 14, Ex. 1 at § 2.5) (emphasis added)

The warranty clause states: "[Defendant] and each of its employees, consultants and subcontractors performing Services possesses the required skills to provide and perform the Services in accordance with this Agreement and the Proposal." (D.I. 14, Ex. 1 at § 2.5)  Plaintiff argues these representations were false "as '[Defendant] and its agent both lacked the required skills to furnish the Services.'" (D.I. 17 at 16 (quoting D.I. 12 at ¶ 58); *see also* D.I. 12 at ¶¶ 1, 186, 188, 191–92)

Defendant argues such statements cannot support a contractual fraud claim because any alleged breach of the misrepresentations in section 2.5 concerning Defendant's knowledge and skill would only support a claim for breach of warranty, not fraud. (D.I. 14 at 16)  Furthermore, without citing any supporting authority in the record, Defendant argues for dismissal of Count II on the basis that the Plaintiff asserts a fraud claim to avoid the limited damages remedy in the contract. (*Id.*)

On a motion to dismiss, the court must accept the facially plausible allegations as true and view them in the light most favorable to the Plaintiff.  The court will not address Defendant's factual attack on the merits of Plaintiff's claims.  Therefore, the court recommends denial of the Motion to dismiss the contractual fraud claims.

### B.    Plaintiff Has Plausibly Pled Fraud in the Inducement

To plead fraud in the inducement, a plaintiff must allege:

(1) a false representation of material fact; (2) the defendant's knowledge of or belief as to the falsity of the representation or the defendant's reckless indifference to the truth of the representation; (3) the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance.

*El v. Davis*, No. 12-1580-GMS, 2013 WL 1914233, at *2 (D. Del. May 7, 2013).

Here, the Defendant argues that the allegations of the FAC amount to no more than a breach of contract claim for Defendant's misrepresentation of its ability to perform its obligations under the contract. (D.I. 14 at 15–16)  Defendant seeks dismissal of Count II because a plaintiff cannot "bootstrap a breach of contract claim into a [fraud] claim by intoning the *prima facie* elements of the tort while telling the story of the defendant's failure to perform under the contract." *Voterlabs, Inc. v. Ethos Grp. Consulting Servs., LLC*, No. 19-524-RGA-SRF, 2020 WL 6131760, at *9 (D. Del. Oct. 19, 2020), *report and recommendation adopted*, 2020 WL 10622570 (D. Del. Dec. 4, 2020).

A fraud claim "must set out 'the who, what, when, where and how of the events at issue' or otherwise inject precision or some measure of substantiation into its allegations." *FinancialApps, LLC v. Envestnet, Inc.*, No. 19-1337-CFC-CJB, 2020 WL 4569466, at *6 (D. Del. July 30, 2020) (citation omitted); *see also Frederico*, 507 F.3d at 200.  In cases where information lies outside of the plaintiff's control, a plaintiff may allege a defendant's state of mind "upon information and belief." *Brinkmeier v. BIC Corp.*, 733 F. Supp. 2d 552, 559 (D. Del. 2010); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1418 (noting the particularity standard is "relaxed" when the factual information is in the defendant's knowledge or control).

Defendant argues the Plaintiff has not sufficiently alleged Defendant's knowledge and intent to defraud or Plaintiff's justifiable reliance. (D.I. 14 at 16–22)  In addition, Defendant argues that optimistic statements about future success cannot support a fraud in the inducement claim. (*Id.* at 22–23)

1.  The FAC Plausibly Alleges Knowledge and Intent to Defraud

Defendant contends the Plaintiff has not satisfied the heightened Rule 9(b) pleading standard because the Plaintiff asserts conclusory allegations of Defendant's knowledge and intent "upon information and belief" without identifying specific facts upon which the belief is based. (*Id.* at 16–20)  In response, Plaintiff argues that general averments of Defendant's state of mind are allowed under Rule 9(b), and when information is outside of Plaintiff's control it may plead facts based upon "information and belief." (D.I. 17 at 18)

Defendant contests the merits of the allegations, calling them internally inconsistent and implausible.  At this stage of the proceedings, the court must view the FAC in the light favorable to the Plaintiff and determine whether it states a plausible claim for which discovery is warranted.  Whether the non-moving party can ultimately prevail on the merits is not an issue for the court to resolve at this stage.

Defendant's reliance on *Kuhn Const. Co. v. Diamond State Port Corp.*, No. 10-637-SLR, 2011 WL 1576691 (D. Del. Apr. 26, 2011) ("*Kuhn I*") and *Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*, 844 F. Supp. 2d 519 (D. Del. 2012) ("*Kuhn II*") is misplaced.  (D.I. 14 at 16–18)  In *Kuhn I*, the court dismissed the plaintiff's fraud claim because the plaintiff failed to allege the defendant's state of mind nor did the plaintiff allege that the content of the representations were false.  2011 WL 1576691, at *9–10.  In *Kuhn II*, the court dismissed the plaintiff's fraud claim because the plaintiff did not allege "what motivation [the defendant] would have for making [the] knowingly false representations."  844 F. Supp. 2d at 530.

Unlike *Kuhn I & II*, the FAC describes the content of the representations, explains why they were false, and addresses how such conduct amounts to fraudulent inducement.  For example, Plaintiff alleges that Defendant's representations that it had customers who started with

FedRAMP Moderate and DOD SRG IL5 were false. (D.I. 12 at ¶¶ 40–41)  Plaintiff also alleges

that Defendant's representations about having scripts, automation, and templates were false. (*Id.*

at ¶¶ 45–48)  Finally, Plaintiff alleges it relied on these representations. (*Id.* at ¶ 50)

Furthermore, the Plaintiff sufficiently alleged the Defendant's motive in making these allegedly

false representations was to secure and retain Plaintiff as a customer. (*Id.* at ¶¶ 72, 153, 191).

Additionally, the FAC contains plausible averments that the Defendant knew or believed

its representations were false.  For example, Andrew Plato, Defendant's Founder and Chief

Technical Officer, admitted Defendant's executives provided Plaintiff with false and exaggerated

representations. (*Id.* at ¶ 67; *see also id.* at ¶ 109 (alleging that Defendant admitted "to not

having the necessary product experience to resolve issues surrounding misconfiguration"))  The

FAC also alleges that Plaintiff expressed its concerns to Defendant on multiple occasions about

its misleading representations, so the Defendant knew or should have known its representations

were false. (*See e.g., id.* at ¶¶ 91, 94, 187; *see also id.* at ¶ 92 (alleging that Defendant "was

aware of the discrepancies between what its delivery team could actually deliver and the solution

promises made by [Defendant's] sales and senior executive teams"))

Plaintiff's allegations in the FAC are sufficient to satisfy the Rule 9(b) pleading standard

for allegations based "upon information and belief" because the FAC sets forth specific facts

upon which the belief is reasonably based.  Defendant's state of mind has been plausibly pled.

For example, Plaintiff alleges that admissions by Defendant's key personnel concerning its level

of experience and resources were false and were intended to induce the Plaintiff to enter into the

contract with the Defendant. (*See id.* at ¶¶ 38–85). *See FinancialApps, LLC*, 2020 WL 4569466,

at *7 (finding the defendant's mental state may be alleged generally and the plaintiff's

allegations of who made the statements and that the defendant knew them to be false were sufficient at the motion to dismiss stage).

### 2.  The FAC Plausibly Alleges Plaintiff's Justifiable Reliance

Defendant asserts three arguments for dismissal of the FAC based on Plaintiff's failure to plead justifiable reliance.  First, Defendant contends that the warranty clause of the MSA limits the Defendant's representations and warranties.  (D.I. 14 at 21)  The warranty clause provides:

> Notwithstanding the foregoing, [Plaintiff] understands and acknowledges that it is not always feasible for [Defendant] and each of its employees, consultants, and subcontractors to possess complete knowledge of all possible implementations of a particular third-party application(s) and that of the [Plaintiff's] application(s).

(D.I. 14, Ex. 1 at § 2.5)  The provision further states that the Plaintiff will "reasonably explain" technological details "if and as requested" by Defendant so that the Defendant can "properly fulfill the [contract.]" (*Id.*)  The language of the warranty clause does not support Defendant's argument.  Such language evinces the parties' intent to ensure the contractual goals are met.  It does not state that Plaintiff agreed not to rely on representations made by the Defendant.

Defendant's second argument points to inconsistencies in allegations of justifiable reliance in the FAC.  The Defendant disputes Plaintiff's claim it lacked knowledge of the Defendant's alleged misrepresentations because it was the one who "provided [Defendant] with the necessary training, documents, and maintenance." (D.I. 14 at 21)  However, as stated *supra*, the MSA provides for the Plaintiff to "reasonably explain" its technology.  (D.I. 14, Ex. 1 at § 2.5)  This provision says nothing about reliance nor does it state that the Plaintiff's agreement to provide training, documents or other assistance was at the expense of foreclosing reliance on any other representations about the Defendant's ability to perform the contract.  Furthermore, Defendant seeks dismissal of Count II based upon its contention that the FAC contains factual inconsistencies.  The court will not resolve factual disputes on a motion to dismiss.

14

Defendant's final argument is that the Plaintiff could not have justifiably relied on Defendant's alleged misrepresentations because it knew of Defendant's numerous performance shortcomings yet entered into another agreement for Defendant's services covering more stringent cloud service security requirements. (D.I. 14 at 21–22; D.I. 19 at 7)  The parties did not include language based upon any such new representations in the High Proposal addendum to the MSA. (*See* D.I. 14, Ex. 1)

This argument also challenges the merits of the factual allegations.  On a motion to dismiss, the court must view the allegations in the light favorable to the plaintiff.  When viewed in that light, the FAC plausibly pleads that Defendant's representations about its success providing similar services for other customers, its resources and capabilities to enable Plaintiff to attain audit-readiness, and its assurances that it would correct problems going forward were intended to induce the Plaintiff to enter into the MSA and subsequent addendum. (*See e.g.*, D.I. 12 at ¶¶ 40–50, 64–72)

3.  Defendant Improperly Seeks a Factual Determination Regarding Optimistic Statements About Future Success

Finally, Defendant argues the Plaintiff's allegations related to the Defendant's alleged false representations of its skill and expertise cannot support a fraud in the inducement claim because such statements are nothing more than optimistic marketing statements or expressions of confidence in its capabilities. (D.I. 14 at 22–23)

Beyond reciting the law, the Defendant fails to support its position. (*Id.* at 22)  Further, in *Clark v. Davenport*, the court found the defendant's "conduct support[ed] an inference that he intended to deceive [the plaintiff], rendering his statements [regarding future prospects] actionable at the pleading stage." No. 2017-0839-JTL, 2019 WL 3230928, at *12 (Del. Ch. Jul. 18, 2019).

15

The Defendant's argument asks the court to examine the merits of the allegations and conclude that they are "puffery" not false representations. The court will not conduct a fact-based analysis on a motion to dismiss.

## V.   CONCLUSION

For the foregoing reasons, it is recommended that the court DENY Defendant's Motion. (D.I. 13)  This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10) pages each.  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated:  February 2 , 2023

Sherry R. Fallon
United States Magistrate Judge